UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CHERYL D. OVERSTREET,<br><br>          Petitioner,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security Administration,<br><br>          Respondent. | Case No. 1:13-CV-00324-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Currently pending before the Court for consideration is Petitioner Cheryl Overstreet's ("Petitioner") Petition for Review (Dkt. 1) of the Respondent's denial of social security benefits, filed July 24, 2013. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the Commissioner's decision.

# PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on March 11, 2010, claiming disability beginning December 4, 2004, caused by fibromyalgia. This application was denied initially and on reconsideration. A hearing was conducted on November 1, 2011, before Administrative Law Judge ("ALJ")

**MEMORANDUM DECISION AND ORDER - 1**

John Molleur. At the hearing, Petitioner was represented by counsel, and the ALJ heard testimony from Petitioner, and from vocational expert Polly Peterson. ALJ Molleur issued a decision finding Petitioner not disabled on December 7, 2011. Petitioner timely requested review by the Appeals Council, which denied her request for review on June 28, 2013.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g). At the time of the November 1, 2011 hearing, Petitioner was forty-seven years of age. Petitioner graduated from high school and attended some college. She has past work experience as a receptionist, accounts payable clerk, medical clerk, food service supervisor, and human resources clerk.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantially gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date, which was amended to January 2, 2009. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's fibromyalgia, obesity, sleep apnea, and asthma severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for any listed impairments, specifically considering Listings 3.03 (asthma), 3.10

(sleep-related breathing disorder, evaluated under 3.09 and 12.02), and 14.02 (systemic lupus erythematosus). If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner retained the RFC to perform sedentary work with limitations that prohibited her from climbing ropes, ladders or scaffolds; and prohibited her from exposure to unprotected heights, moving machinery, dust, fumes, gases, poor ventilation, noxious odors or other lung irritants. She could occasionally climb ramps and stairs, and engage in other postural activities frequently. With this RFC, the ALJ determined Petitioner could perform her past relevant work as a receptionist, accounts payable clerk, and medical clerk. The ALJ did not reach step five, because Petitioner could not demonstrate an inability to perform past relevant work.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind

**MEMORANDUM DECISION AND ORDER - 3**

of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER - 4**

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner believes the ALJ erred at step four in assessing her credibility and in rejecting the opinion of her treating physician, Dr. Ribbens. First, Petitioner contends the ALJ employed circular reasoning in making his credibility finding. Petitioner contends there is substantial evidence in the record to support her subjective complaints of disabling pain, and that the ALJ ignored the relevant evidence, most notably her regular medical visits with Dr. Ribbens to manage her pain.

Dr. Ribbens has treated Petitioner since 2004, and manages her fibromyalgia and other chronic conditions. In his opinion, Petitioner would miss work three to four times each month, and would require unscheduled breaks throughout the day. (AR 611-13.) With those limitations, the vocational expert opined Petitioner was disabled. (AR 71.) The ALJ rejected Dr. Ribbens's opinion and gave more weight to state agency physician Dr. Leslie Arnold's opinion.

**MEMORANDUM DECISION AND ORDER - 5**

1.  **Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony).

Where, as here, a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either

outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and, treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

Petitioner first contends the ALJ used "circular reasoning" when he concluded Petitioner's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Pet. Brief at 10 (Dkt. 12); (AR 27). While Petitioner may be correct that the ALJ made the above statement, that is as far as Petitioner's argument lasts. The ALJ's statement is inappropriate and inadequate *only if* the ALJ does not also provide sufficient reasons supporting a finding that a claimant is not wholly credible. *Medeiros v. Astrue*, No. 3:11-cv-00386-JE, 2012 WL 6929275 at *8 (Dec. 27, 2012). The ALJ provided extensive

**MEMORANDUM DECISION AND ORDER - 7**

analysis and support for his conclusion that Petitioner lacked credibility about the limiting effects of her symptoms, citing Petitioner's treatment records, which indicated her fibromyalgia was stable and manageable with medication; her headaches were controlled with medication; her sleep apnea was resolved with the use of a C-PAP machine; and Petitioner's reports of her daily activities, which included hiking and travel, caring for five children, and managing a busy household.

Because of her subjective complaints of pain, the ALJ limited Petitioner to the exertional demands of sedentary work, which would involve lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a); and sedentary jobs primarily involve sitting, although walking and standing are required occasionally. *Id*. The ALJ's determination is supported by substantial evidence in the record, as explained below.

While it is true Petitioner sought continued treatment for her chronic conditions on a regular basis since 2004, she did not always present with pain from fibromyalgia. For example, out of fifteen visits to Dr. Ribbens in 2009,[1] Petitioner specifically mentioned she was seeking treatment for back pain, fibromyalgia, or both, only five times. On the other occasions, Petitioner complained of a cough, chest congestion, sinus infection, and wheezing. Two other visits were for a med re-check and bloodwork. The ALJ noted Petitioner made good progress with her fibromyalgia with pool therapy and physical

---

[1] Because of Petitioner's amended onset date of January 2, 2009, the ALJ focused upon Petitioner's condition that year. He did, however, consider the entirety of the medical record. (AR 22, 24.)

therapy in January and February of 2009. (AR 27.) The ALJ noted also that Petitioner's condition was considered stable in November of 2009, and upon examination she was "much less tender to palpitation . . . and moving much better." (AR 28.)

Next, Petitioner argues the ALJ ignored the references in the record to her sporadic activities, and the worsening symptoms of her fibromyalgia during 2009 and 2010. Petitioner takes issue also with the example the ALJ gave of Petitioner "hiking," because Petitioner's husband submitted clarification that Petitioner walked up the steps of an outdoor amphitheater, and did not hike through the woods. Petitioner contends that her ability to engage in activities that are "sporadic and punctuated with rest" do not support a finding that Petitioner can engage in regular work activities.

But the ALJ cited specific examples in the medical records indicating Petitioner was not entirely credible. The ALJ focused extensively on the records of Dr. Ribbens, contained in Exhibit 3F. Within those records, the ALJ specifically cited to the treatment note in November of 2009, when Petitioner's fibromyalgia condition was considered stable, she was doing better, her life was stable, and she was doing well with pool therapy. (AR 300, 28.) In this same treatment note, Dr. Ribbens noted that Petitioner self-reported she was doing better, and only had some "flares if sitting at a football game," but that "she recovers quickly with HEP."[2] *Id.*  A prior treatment note on September 22, 2009, indicated Petitioner was doing better after physical therapy had started. (AR 305.) The same treatment note indicated Petitioner recently traveled, and did well.  A treatment

---
[2] HEP is shorthand for Home Exercise Program.

note on July 14, 2009, indicated Petitioner had a mild flare with "traveling over 4th of July," but that it was better with hot tub use. (AR 314.)

On January 20, 2009, Petitioner reported she was doing well on her current medication, and her fibromyalgia pain was better despite moving. (AR 334.) She had just completed a "busy holiday schedule and travel." (AR 338.) In October of 2008, Petitioner reported she was "able to hike this summer with little problems." (AR 343.) She traveled to Atlanta in May of 2007, and upon return was doing much better. (AR 384.) In June of 2006, Petitioner reported her fibromyalgia was stable, she had been active in the yard, and it was only with "higher activity jobs" that she experienced "some fatigue." (AR 399.)

The ALJ cited the consistent reference in the record to improvement of Petitioner's fibromyalgia symptoms with medication, exercise and physical therapy. (AR 28, 30.) And while Petitioner may take issue with the ALJ's example of her "hiking" in 2009, the record is replete with references to Petitioner's busy life, including multiple instances of travel and an earlier reference to hiking in 2008.

As for her children, Petitioner argues that her children do not require much care, given they are at school during the day. The ALJ noted Petitioner cared for five children at home, some of which had special emotional needs requiring medical appointments. (AR 30.) The record contains references to "racing around with children's busy life." (AR 352; *see also* AR 373, noting she had been "very busy" in October of 2007). While it is true that Petitioner's children are school age, she testified she was able to manage her

children's doctor appointments, and help her nine-year-old with attention deficit problems prepare for school each morning. (AR 30.)[3]

Additional contradictory evidence in the record cited by the ALJ as support for his adverse credibility determination included Petitioner's testimony that she napped during the day, but Dr. Ribbens indicated she should minimize naps because of her sleep apnea. (AR 30.) In addition, Petitioner testified her husband worked from home one day a week to help her, but also to keep her company. (AR 30.)

Petitioner's Reliance upon *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004), in support of her argument that the ALJ erred in his credibility assessment is unavailing. Although Benecke suffered from fibromyalgia, her pain caused her to visit the emergency room; complain to her physicians about severe pain "throughout her body" in her hands, wrists, elbows, shoulders, neck, back, hips, knees, ankles, and feet that interfered with routine tasks; and she consulted several rheumatologists to treat her symptoms. The ALJ rendered an adverse credibility finding based upon the lack of "objective evidence for a disease that eludes such measurement." 379 F.3d at 594. Here, in contrast, Petitioner did not report the same level of severe pain to her treating physician; did not consult a specialist, instead electing to be treated by her family physician; did not present to the

---

[3] The ALJ cited also Petitioner's testimony that she and her husband hired a housecleaning service because Petitioner cannot perform housework. Petitioner's husband submitted a letter indicating they used a housekeeping service since 2006. (AR 212.) Although the ALJ did not have that clarification, he found also that it was not clear that such a service was "necessary" prior to December 2009. (AR 30.) Further, Petitioner's husband reported that Petitioner would be "bedridden" for up to two days after cleaning the house, but Petitioner never reported such severe symptoms to Dr. Ribbens in any of the medical records.

**MEMORANDUM DECISION AND ORDER - 11**

emergency room with disabling pain on any occasion; and was able to attend football games, travel, take care of her children, and reportedly controlled her symptoms well with a home exercise program. The ALJ credited Petitioner's testimony that she did, indeed, suffer from pain caused by fibromyalgia, but found Petitioner's testimony about the intensity, persistence and limiting effect of her symptoms not credible based upon Petitioner's activities, reports to her physicians, and medical findings.

The ALJ's reasons provided in support of his adverse credibility determination are clear and convincing, and supported by substantial evidence in the record. Although the evidence could support Petitioner's interpretation, it is not for this Court to substitute its judgment for that of the ALJ when the evidence could reasonably support the ALJ's determination, as it does here. Accordingly, the ALJ did not commit error.

2. **Medical Source Opinions**

The United States Court of Appeals for the Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). In turn, an examining physician's opinion is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for

**MEMORANDUM DECISION AND ORDER - 12**

"clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

An ALJ is not required to accept an opinion of a treating physician if it is conclusory and not supported by clinical findings. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Additionally, an ALJ is not bound to a physician's opinion about a petitioner's physical condition or the ultimate issue of disability. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). An ALJ also may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been property discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Reports of treating physicians submitted relative to Petitioner's work-related ability are persuasive evidence of a claimant's disability due to pain and his inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 13**

1984). Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981)). Clear and convincing reasons must also be given to reject a treating doctor's ultimate conclusions concerning disability, especially when they are not contradicted by another doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

The ALJ possessed two conflicting physical RFC assessments in the record. First, Dr. Ribbens, Petitioner's treating physician, submitted a physical RFC assessment dated June 30, 2010, indicating Petitioner's fibromyalgia symptoms were stable, and at her current level of physical functioning, Petitioner would need to recline two hours each workday; pain would interfere with her concentration and attention frequently; and, she would need up to six unscheduled breaks each day as well as three or four unscheduled absences each month. (AR 611-612.) Dr. Ribbens was also of the opinion that Petitioner's ability to use her hands was limited. His RFC assessment was based upon his treatment of Petitioner, and Petitioner's self-reports. (AR 613.)

On the other hand, Dr. Leslie Arnold, a state agency reviewing physician, completed an RFC assessment on April 9, 2010. (AR 469.) According to Dr. Arnold's review of the medical records, Petitioner's description of the severity of her symptoms was only partially credible. Dr. Arnold noted that the medical records indicated Petitioner's physical pain symptoms were controlled due to proper emphasis on exercise

**MEMORANDUM DECISION AND ORDER - 14**

and sleep, as well as her physical therapy and water exercise programs. (AR 476.) Dr. Arnold was of the opinion Petitioner could perform light work.

The ALJ rejected both RFC assessments, and supported his determination with clear and convincing reasons[4] supported by substantial evidence in the record. First, although the ALJ discredited Petitioner's credibility, he did not do so entirely. By discrediting Dr. Arnold's opinion, the ALJ necessarily found Petitioner's complaints to be slightly more credible than did Dr. Arnold and thus limited her to sedentary, rather than light work. Otherwise, the ALJ found Dr. Arnold's RFC findings "generally consistent with the records available" for Dr. Arnold's review, and he rejected only that portion of her RFC assessment he found inconsistent with the additional evidence in the record that Dr. Arnold did not have. (AR 31.)

As for Dr. Ribbens, the ALJ cited the following clear and convincing reasons: the claimant's subjective reports of her activity level prior to December of 2009; her exercise program; and the lack of any manipulative limitations in the treatment notes, thereby contradicting Dr. Ribbens's RFC assessment. (AR 31.) Second, the ALJ noted that although Dr. Ribbens limited Petitioner to crouching no more than 10% of the day, treatment notes indicated Petitioner could crouch and move upon examination. (AR 31.)

---

[4] Petitioner argues that Dr. Ribbens's opinion is not contradicted by another doctor because the ALJ rejected both his opinion and Dr. Arnold's opinion, and therefore the clear and convincing standard applies. Rather than resolving the conflict between the standard of review (clear and convincing or specific and legitimate), the Court will simply apply the higher standard.

Finally, the ALJ noted that there was no support in the record for Dr. Ribbens's opinion that Petitioner would miss work multiple days each month.

As further support for his finding that Dr. Ribbens's opinion was not entitled to controlling weight, the ALJ noted also Mack Stephenson's psychological consultation report, which, based upon a review of the record, noted Petitioner's "busy life style." (AR 31.) The ALJ noted that Dr. Stephenson supported his opinion with specific examples contained in the medical records. (AR 31, 489.)

The record, as discussed above in the Court's analysis of the ALJ's credibility determination, contains substantial evidence to support the ALJ's determination that Dr. Ribbens's RFC assessment was not entitled to controlling weight based both upon Petitioner's credibility and Dr. Ribbens's treatment notes. All of the reasons cited by the ALJ are clear and convincing based upon the record as a whole. Therefore, the ALJ did not commit error.

# ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, it is hereby **ORDERED** that the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

Dated: **September 22, 2014**

Honorable Candy W. Dale
United States Magistrate Judge